Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER JAGT, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| AQUAVENTURE HOLDINGS LIMITED, DOUGLAS BROWN, ANTHONY IBARGUEN, DEBRA COY, HUGH EVANS, PAUL HANRAHAN, DAVID LINCOLN, CYRIL MEDUÑA, RICHARD F. REILLY, and TIMOTHY WHALL, | |
| Defendants. | |

Plaintiff Christopher Jagt ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against AquaVenture Holdings Limited ("AquaVenture" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of AquaVenture by Culligan International Company ("Culligan") and Amberjack Merger Sub Limited ("Merger Sub").[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[2]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Merger Sub is a wholly-owned subsidiary of Culligan.

[2] For example, between February 2019 and October 2019, the Company reportedly participated in conferences in New York, New York. *See* AquaVenture Holdings Limited, *Event Details*, https://aquaventure.com/investors/events-and-presentations/event-details/2019/The-Future-of-Water-Conference-New-York-New-York/default.aspx (last visited Feb. 20, 2020); AquaVenture Holdings Limited, *AquaVenture Holdings Limited to Participate at Upcoming Investor Conferences* (Sept. 4, 2019), https://www.businesswire.com/news/home/20190904005139/en/AquaVenture-Holdings-Limited-Participate-Upcoming-Investor-Conferences (last visited Feb. 20, 2020).

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of AquaVenture's ordinary shares.

7.      Defendant AquaVenture provides water-as-a-service solutions in North America, the Caribbean, and South America. The Company has two operating platforms: Seven Seas Water and Quench. Through Seven Seas Water, the Company offers desalination, wastewater treatment, and water reuse solutions to governmental, municipal, industrial, property developer, and hospitality customers. Through Quench, the Company offers point-of-use filtered water systems and related services through direct and indirect sales channels to approximately 50,000 institutional and commercial customers, including more than half of the Fortune 500. The Company is incorporated in the British Virgin Islands. The Company's ordinary shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol, "WAAS."

8.      Defendant Douglas Brown ("Brown") is the Founder and Chairman of the Board of the Company.

9.      Defendant Anthony Ibarguen ("Ibarguen") is President, Chief Executive Officer ("CEO"), and a director of the Company.

10.     Defendant Debra Coy ("Coy") is a director of the Company.

11.     Defendant Hugh Evans ("Evans") is a director of the Company.

12.     Defendant Paul Hanrahan ("Hanrahan") is a director of the Company.

13.     Defendant David Lincoln ("Lincoln") is a director of the Company.

14.     Defendant Cyril Meduña ("Meduña") is a director of the Company.

15.     Defendant Richard F. Reilly ("Reilly") is a director of the Company.

16.     Defendant Timothy Whall ("Whall") is a director of the Company.

3

17.     Defendants Brown, Ibarguen, Coy, Evans, Hanrahan, Lincoln, Meduña, Reilly, and Whall are collectively referred to herein as the "Individual Defendants."

18.     Defendants AquaVenture and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19.     Culligan manufactures water treatment products. Culligan's products include water softeners, drinking water systems, whole-house systems and solutions for businesses. Culligan is incorporated in Delaware.

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20.     On December 23, 2019, AquaVenture and Culligan issued a press release announcing that they had entered into a definitive agreement under which Culligan would acquire AquaVenture for $27.10 per share in an all-cash transaction. The press release states, in pertinent part:

### Culligan and AquaVenture Announce Definitive Merger Agreement

- *Culligan to acquire AquaVenture in an all-cash transaction valued at approximately $1.1 billion*
- *AquaVenture shareholders to receive $27.10 per share in cash*
- *AquaVenture to join Culligan's leading consumer water service and solutions platform as a privately held company*

December 23, 2019 07:30 AM Eastern Standard Time

ROSEMONT, Ill. & TAMPA, Fla.--(BUSINESS WIRE)--Culligan, the innovative brand in consumer-focused and sustainable water solutions and services, and AquaVenture Holdings Limited (NYSE: WAAS) ("AquaVenture"), a leading multinational developer and provider of sustainable Water-as-a-Service® (WAAS®) solutions, today announced they have entered into a definitive agreement under which Culligan will acquire AquaVenture for $27.10 per share in an all-cash transaction valued at approximately $1.1 billion, including AquaVenture's net debt.

AquaVenture has grown to become one of the leading WAAS solution providers in North America, the Caribbean and Latin America. The company offers point-of-use filtered water systems and related services to more than 55,000 institutional and commercial customers across the U.S. and Canada, and desalination and wastewater treatment solutions to governmental, municipal, industrial and hospitality customers throughout the Americas.

The transaction will result in AquaVenture joining Culligan's leading consumer water service and solutions platform as a privately held company. Under Culligan's ownership, AquaVenture will continue its focus on providing world-class service and innovative water treatment solutions for its customers.

"AquaVenture is a leading player in water purification solutions with a strong record of innovation," said Scott Clawson, CEO of Culligan. "We are excited to work with the AquaVenture team and look forward to the many opportunities ahead."

Culligan responsibly provides safe, soft, clean water that improves consumer's health and wellness. The company has set a high standard in the industry for premium drinking water and is a trusted partner to residences, offices, restaurants and industrial facilities throughout the world. Culligan is a total solutions provider with its complete suite of water filtration systems and treatment solutions. Culligan is owned by Advent International, one of the largest and most experienced global private equity investors.

*       *       *

**Transaction Details**

Under the terms of the agreement, AquaVenture shareholders will receive $27.10 in cash for each ordinary share of AquaVenture they own. The all-cash purchase price represents a premium of approximately 25% to AquaVenture's closing share price on December 20, 2019, and a premium of approximately 33% to AquaVenture's 90-day volume weighted average share price.

Culligan has fully committed debt financing to support the transaction, along with equity financing provided by investment funds affiliated with Advent International. There are no financing contingencies contemplated under the terms of the merger agreement.

The transaction has been unanimously approved by AquaVenture's Board of Directors and is expected to close in early April 2020, subject to AquaVenture shareholder approval, regulatory approvals and the satisfaction of other customary closing conditions.

Upon the completion of the transaction, AquaVenture will become a privately held company, and shares of its common stock will no longer be listed on any public market.

Citi and UBS are serving as financial advisors to AquaVenture. Goodwin Procter LLP is serving as legal advisor to AquaVenture, and Weil, Gotshal & Manges LLP is serving as legal advisor to Culligan.

21.     On February 18, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement in connection with the Proposed Transaction (the "Proxy Statement").

## B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22.     The Proxy Statement, which recommends that AquaVenture shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) AquaVenture's financial projections; and (ii) the financial analyses performed by AquaVenture's special committee's[3] financial advisors, Citigroup Global Markets Inc. ("Citigroup") and UBS Securities LLC ("UBS"), in connection with their fairness opinions.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger; (ii) Recommendation of the Company's Board of Directors; (iii) Opinion of Citigroup Global Markets Inc.; (iv) Opinion of UBS Securities LLC; and (v) Projected Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated March 16, 2020 shareholder vote, AquaVenture shareholders will

---

[3] The Proxy Statement provides that AquaVenture's "board of directors established a special committee (the "special committee") that was authorized to consider and evaluate any proposals that might be received by the Company regarding a potential strategic transaction, participate in and direct the negotiation of the material terms and conditions of any such transaction and recommend to the board of directors the advisability of entering into any such transaction or pursuing another strategic alternative. The special committee consisted of Hugh Evans (who was designated as the Chair), Debra Coy, Paul Hanrahan, Richard F. Reilly and Timothy J. Whall." *See* Proxy Statement at 26.

be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning AquaVenture's Financial Projections

25. The Proxy Statement omits material information concerning AquaVenture's financial projections.

26. The Proxy Statement provides that, "[i]n connection with the evaluation of potential strategic alternatives by the special committee and the board of directors . . . [AquaVenture] management prepared certain unaudited prospective financial information for AquaVenture based on [its] long-range plan."

27. The Proxy Statement presents a table of the "*Summary of [] Base Case Forecast*," which contains "a summary of the base case forecast for AquaVenture for the period from 2019 through 2024 as prepared by [AquaVenture] management and provided by [its] management to the special committee and the board of directors" (the "Base Case Forecast").

28. The Proxy Statement presents a table of the "*Summary of M&A Forecast*," which "contain[s] a summary of a forecast for AquaVenture for the period from 2019 through 2024 reflecting the base case forecast plus the projected results of the Company making approximately $85.0 million of acquisitions in 2020 and approximately $110.0 million of acquisitions per year from 2021 to 2024 at Adjusted EBITDA multiples of 6.0x to 7.0x as prepared by [AquaVenture] management for illustrative purposes and provided by [its] management to the special committee and the board of directors" (the "M&A Forecast").

29. The Proxy Statement, however, fails to disclose the following concerning the Base Case Forecast and the M&A Forecast: (1) all line items used to calculate (i) Adjusted EBITDA; and (ii) unlevered free cash flow (as calculated by Citigroup and UBS); and (2) a reconciliation of

all non-GAAP to GAAP metrics.

30.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[4]

31.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of AquaVenture's projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

32.     Further, the Proxy Statement provides that UBS utilized "five-year standalone projections for each of [AquaVenture's] Quench and Seven Seas Water businesses, as provided by

---

[4] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 20, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

management of the Company[,]" in connection with its discounted cash flow analyses.

33.     The Proxy Statement, however, fails to disclose the five-year standalone projections for each of the Quench and Seven Seas Water businesses, and all underlying line items.

34.     The disclosure of AquaVenture's projected financial information is material because it would provide AquaVenture shareholders with a basis to project the future financial performance of AquaVenture and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by AquaVenture and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

35.     The Company's projections for its Quench and Seven Seas Water businesses are also material because, *inter alia*, the Company was actively exploring separate sales of each of those businesses. Various parties expressed an interest and submitted proposals to acquire the separate businesses. Indeed, separate sales of the business lines had "the potential to realize a higher value for shareholders" than a sale of the Company as a whole.[5]

36.     The above-referenced omitted information, if disclosed, would significantly alter

---

[5] In explaining its reasons for entering into the Proposed Transaction, the Board and special committee admit that they considered "pursuing separate dispositions of [AquaVenture's] Seven Seas Water and Quench businesses[.]" Yet the Board and special committee purportedly approved the merger agreement and recommended that AquaVenture shareholders adopt that agreement because, *inter alia*, they believed the sale of the entire company would provide "greater certainty of shareholder value and less risk to shareholders relative to the potential separate sales of [the] Seven Seas Water and Quench businesses[.]" This further supports disclosure of the Company's projections for its Quench and Seven Seas Water businesses.

the total mix of information available to AquaVenture shareholders.

**2. Material Omissions Concerning Citigroup's and UBS's Financial Analyses**

37.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Citigroup and UBS.

38.     The valuation methods, underlying assumptions, and key inputs used by Citigroup and UBS in rendering their purported fairness opinions must be fairly disclosed to AquaVenture shareholders. The description of Citigroup's and UBS's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, AquaVenture shareholders are unable to fully understand these fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to AquaVenture shareholders.

**a.  *Citigroup's Financial Analyses***

39.     The Proxy Statement fails to disclose the following concerning Citigroup's "*Discounted Cash Flow Analysis*": (1) the terminal values for AquaVenture; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 8.6%; and (ii) illustrative ranges of terminal growth rates of 2.0% to 3.0%, 1.0% to 2.0%, and 1.5% to 2.5%; (3) AquaVenture's net debt balance as of September 30, 2019; and (4) the number of AquaVenture ordinary shares outstanding on a fully diluted basis.

40.     The Proxy Statement fails to disclose the specific inputs and assumptions provided by AquaVenture management in connection with Citigroup's "*Illustrative Discounted Cash Flow Impact of Acquisitions*."

41.     With respect to Citigroup's analysis of Wall Street research analysts' one-year

forward price targets, the Proxy Statement fails to disclose: (1) the individual price targets for AquaVenture observed by Citigroup in its analysis; and (2) the sources of those price targets.

  **b.** *UBS's Financial Analyses*

  42. The Proxy Statement fails to disclose the following concerning UBS's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging between 8.5% and 9.5%; and (ii) terminal multiples of 15.0x to 17.0x; (2) the terminal values for the Company as of December 31, 2024; and (3) the net debt and diluted share information used by UBC in its analysis.

  43. With respect to UBS's additional discounted cash flow analyses, the Proxy Statement fails to disclose: (1) the five-year standalone projections for each of the Quench and Seven Seas Water businesses, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) discount rates used in the analyses; and (ii) range of perpetuity growth rates of 3.5% to 4.5% and of 2.5% to 3.5%; and (3) terminal values used in the analyses.

  44. With respect to UBS's analysis of one-year forward stock price targets for AquaVenture's ordinary shares based on Wall Street research analysts' reports, the Proxy Statement fails to disclose: (1) the individual price targets observed by UBS in its analysis; and (2) the sources of those price targets.

**COUNT I**
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**Against All Defendants**

  45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

  46. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of

11

the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

14

Dated: February 20, 2020          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*